UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK ANTONIO DAVIS,

       Petitioner,

v.                                   Case No. 1:12-CV-652
                                   HON. R. ALLAN EDGAR

LLOYD RAPELJE,

       Respondent.

_____/

## **OPINION & ORDER**

       Petitioner filed this § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction for violations of his Sixth and Fourteenth Amendment rights.  In 2009, a jury convicted Petitioner of: First Degree Home Invasion (MCL 750.110a(2)), Felonious Assault (MCL 750.82), Interfering with Electronic Communications (MCL 750.540), Domestic Violence-Second Offense (MCL 750.81(3)), and Resisting or Obstructing an Officer (MCL 750.81d).  ECF No. 40 at 1-2; PageID.278-279.  Petitioner was sentenced as a third habitual offender (MCL 769.11) to 12 to 30 years for the home invasion, 5 to 8 years for the assault, 32 to 48 months for interfering with communications, 239 days for domestic violence, and 32 to 48 months for the obstruction conviction.  ECF No. 40 at 1; PageID.278.  Petitioner remains in the custody of the Michigan Department of Corrections (MDOC).

       After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals with appointed counsel.  ECF No. 40 at 2; PageID.279.  The Court of Appeals denied Petitioner's application and affirmed his convictions on March 3, 2011. *Id.*

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which was denied on July 25, 2011. *Id.*

Petitioner then filed a motion for relief from judgment in the state trial court, which was denied on January 11, 2013. ECF No. 40 at 3; PageID.280. Petitioner appealed to the Michigan Court of Appeals, and again his claims were denied on October 3, 2013. ECF No. 40 at 4; PageID.281. Petitioner then appealed to the Michigan Supreme Court; however, his claims were denied on April 28, 2014. *Id.*

Petitioner did not appeal to the United States Supreme Court. Instead, he filed a habeas petition before this Court on June 20, 2012. ECF No. 1. Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets for the following claims for relief:

> I. Michigan prejudicially increased Petitioner's sentences in violation of his rights under USCA XIV.
>
> II. Michigan prejudicially deprived Petitioner of a Public Trial in violation of his rights under the US Const[itution].
>
> III. Michigan prejudicially violated Defendant's Procedural Due Process rights to a fundamentally fair trial by prosecutorial misconduct in unduly giving prosecutorial witness a copy of audiotapes before trial.
>
> IV. Michigan prejudicially violated Defendant's Confrontation Clause and Procedural Due Process rights by admitting into evidence against him audiotapes without authentication and testimony from maker of tapes.
>
> V. Defendant was prejudicially denied his Sixth Amendment right to effective assistance of trial counsel.

ECF No. 1 at 6-12; PageID.6-12. Respondent filed a response to Petitioner's habeas application

on March 8, 2013. ECF No. 8; PageID.64-115. Petitioner then filed a motion to stay these

proceedings on March 25, 2013, since he had claims still pending before the state trial courts

based on his motion for relief from judgment filed on September 10, 2012.  ECF No. 24;

PageID.132; ECF No. 26.  The Court granted his motion on May 3, 2013.  ECF No. 26.  On June

20, 2014, Petitioner filed an amended habeas petition in this Court raising the following seven

claims:

> I. Michigan did not produce landlord Thomas Ritchie at trial because his testimony would have supported Defendant's actual innocence defense by undermining Amanda Stremlow's credibility regarding the home invasion charge and therefore, Michigan violated his Procedur[al] Due Process right, in an unfairly prejudicial manner, under USCA XIV.

> II.  Michigan's nonproduction of Ritchie at trial resulted in Defendant's Confrontation Clause/Compulsory Process Rights being violated in an unfairly prejudicial manner under USCA VI.

> III.  Michigan withheld, from trial, the land lord of the alleged home invaded dwelling because that landlord would support Defendant's actual innocence defense that no home invasion occurred and, therefore, Michigan violated his Procedural Due Process rights in an un fairly [sic] prejudicial manner under USCA XIV.

> IV. Michigan having withheld the landlord of three from trial also resulted in an unfairly prejudicial Confrontation Clause/Compulsory Process violation under USCA XIV.

> V. Michigan failed to prove beyond reasonable doubt the home invasion element that Amanda Stremlow was lawfully present in the dwelling[] and, therefore, Michigan violated Defendant's Procedural Due Process right, in an unfairly prejudicial manner under USCA XIV by convicting him of home invasion upon insufficient evidence.

> VI.  Unfairly prejudicial ineffective assistance of trial counsel occurred under USCA VI where Defendant's trial counsel failed to seek trial testimony from the landlords of ground one and three, as well as failed to object at trial to the constitutional errors set forth

under grounds one through five.

VII.  Unfairly prejudicial ineffective assistance of appellate counsel occurred under USCA VI where Defendant's appellate counsel failed to present grounds one through six on his appeal of right.

ECF No. 40 at 6-20; PageID.283-291.  Based on this filing, the Court reinstated Petitioner's case.

ECF No. 41.  Respondent filed a supplemental Answer in Opposition on October 15, 2014.  ECF

No. 43; PageID.374-423.  Petitioner filed a reply on November 18, 2014.  ECF No. 45;

PageID.648-660.  The matter is now ready for a decision.

I.

Petitioner filed this petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996.  PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*,

535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures

state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas

application by a person in state custody shall not be granted in regards to any claim that has

previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme

Court, not lower federal courts, in analyzing a petitioner's claim under § 2254.  *Williams v.

Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  A

decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme

Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme

Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the

case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5)

it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*,

271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

  A federal habeas court may not find a state adjudication to be "unreasonable"

simply because that court decides, in its own judgment, that the relevant state decision applied

federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the

state court's application of clearly established federal law was "objectively unreasonable"). This

Court defers to state court decisions when the state court addressed the merits of petitioner's

claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510,

534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach

the question). When applying AEDPA to state factual findings, factual issues by state courts are

presumed correct unless the petitioner rebuts the presumption with clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

  After applying the standards under AEDPA to Petitioner's case, this Court

concludes that Petitioner has not provided clear and convincing evidence that the state court

improperly applied clearly established federal law to the facts of Petitioner's case.

II.

  Petitioner argues that this Court should grant him relief due to violations of his

Sixth and Fourteenth Amendment rights. This Court reviews each of Petitioner's claims

-5-

individually.

### A. Increased Sentence

Petitioner's first claim is that his sentence was improperly increased in violation of his Fourteenth Amendment rights.  ECF No. 1 at 6; PageID.6.  Specifically, Petitioner claims that "[t]he sentencing court increased Petitioner's sentence [based] upon the prosecution['s] claim that he attempted to interfer[e] with the administration of justice."  *Id.*  Petitioner states that this was improper since he was not charged with or convicted of "attempting to interfer[e] with the administration of justice, obstruction of justice, or witness tampering."  *Id.*  Since it is unclear exactly which sentence Petitioner believes was improperly increased, this Court will address each of his sentences.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001) (citation omitted) (noting the Sixth Circuit has declared that "[f]or excellent reasons, claims that a state erred in interpreting or applying its own criminal law or procedural rules are almost always rejected as grounds for granting the writ of habeas corpus.").  Generally, claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do

-6-

not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).

However, even though state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)); *see also Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *see Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on

misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Here, Petitioner's sentences are not so disproportionate to the crime as to be arbitrary or shocking. ECF No. 40 at 1; PageID.278; *see, e.g., Dexter v. Bauman*, No. 4:13-CV-11495, 2015 WL 1787317, at *1 (E.D. Mich. Apr. 16, 2015) (noting 6 months to 4 years for resisting and obstructing); *Mashue v. Rivard*, No. 2:12-CV-13620, 2014 WL 2615373, at *1 (E.D. Mich. June 12, 2014) ("Petitioner was sentenced . . . [to] 25-38 years for first-degree home invasion."); *Hynes v. Birkett*, No. 2:10-CV-10827, at *1 (E.D. Mich. Mar. 8, 2010) (noting first degree home invasion sentence of 10 years 8 months to 20 years); *Neal v. Rapelje*, Civil No. 2:13-CV-11699, 2014 WL 6865559, at *1 (E.D. Mich. Dec. 3, 2014) (noting 29 to 48 months for felonious assault); *Pratt v. Ludwick*, No. 2:10-CV-10641, 2012 WL 3112411, at *1 (E.D. Mich. July 31, 2012) (noting 15 to 48 months for interfering with electronic communications); *Larson v. Conerly*, No. 2:08-CV-14387, 2010 WL 2650389, at *1 (E.D. Mich. June 30, 2010) (noting 22 months to 15 years concurrent for domestic violence and third degree home invasion); *Rhea v. Jones*, 622 F. Supp. 2d 562, 571 (W.D. Mich. 2008) (noting 2 to 4 years for felonious assault and 20 to 40 years for first degree home invasion).

Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court's sentencing misapplied state law to the information in his case. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. Therefore, Petitioner's first claim fails.

-8-

### B. Public Trial

Petitioner next claims that he was deprived of a public trial in violation of his constitutional rights. ECF No. 1 at 7; PageID.7.  Petitioner states that the trial court improperly required his family and friends to leave the courtroom during voir dire for no other reason than to "intimidate" the defense.  *Id.*  Petitioner claims that this was unfair because his "brother, sister-in-law, family friend, and two other friends" traveled from Chicago, Illinois to attend his trial. *Id.*

"Both *Press-Enterprise I* and *Press-Enterprise II* hold that there is a fundamental guarantee of open public proceedings in criminal trials, which includes the proceedings for the voir dire examinations of potential jurors."  *In re Memphis Pub. Co.*, 887 F.2d 646, 648 (6th Cir. 1989) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505-510 (1984) ("*Press-Enterprise I*") and *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*")).  As a result, "there is a strong presumption of open voir dire examinations."  *Id.*  However, "closure may be justified by the finding of an overriding governmental interest, and must be narrowly tailored to serve that interest." *Id.* (citing *Press-Enterprise I*, 464 U.S. at 510).

Petitioner raised this issue to the Michigan Court of Appeals, who considered and rejected this claim:

> Defendant also argues that his constitutional right to a public trial was violated on the first day of trial, when his family and friends were asked to leave the courtroom.  Because this assertion of error was not raised below, we review the assertion for plain error affecting defendant's substantial rights.  *People v. Carines*, 460 Mich. 750, 763-764; 597 NW2d 130 (1999).  We are unable to find any evidence in the lower court record indicating that defendant's family and friends were asked to leave the courtroom. Even assuming they were asked to leave, there is no indication that the trial court closed the

> courtroom to the remaining public during jury voir dire or during trial. Moreover, arguing this matter for the first time on appeal is untimely and precludes the grant of relief. *People v. Vaughn*, – Mich. App. ----; — NW2d ---- (2010) (Docket No. 292385, slip op p 7); lv app pending, citing in part *Presley v. Georgia*, 558 U.S. ----; 130 S Ct 721, 723-724; 175 L.Ed.2d 675 (2010).

*People v. Davis*, No. 295396, 2011 WL 744904, at *1 (Mich. Ct. App. Mar. 3, 2011).  The appellate court's findings are thorough and complete.

It is unclear from the information Petitioner has provided whether the courtroom was actually closed to the public.  In fact, Petitioner concedes in his reply brief that the record is silent about whether the courtroom was actually closed to the public.  ECF No. 45 at 9; PageID.656. In his habeas application, Petitioner only argues that his family and friends were "required . . . to leave the courtroom" (it is only in his reply brief that he mentions for the first time that *all* people were required to leave the courtroom during voir dire).  ECF No. 1 at 7; Page ID.7;   ECF No. 45 at 9; PageID.656.  Asking certain people to leave the courtroom does not mean that the trial court closed the courtroom to the public.  *See Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015) (citing *Waller v. Georgia*, 467 U.S. 39 (1984) (indicating that the *Waller* case applied to cases involving full courtroom closures, and the *Waller* standards of (1) identifying an overriding interest before closure and (2) narrowly tailoring such closure were not clearly extended to cases "where some spectators but not all are removed from the courtroom.")).  In addition, simply stating that the trial judge required Petitioner's family, friends, and others to leave does not mean that the trial judge actually *closed* the courtroom to the public. *See Drummond*, 797 F.3d at 403. Since Petitioner has provided no evidence to show whether the courtroom was actually closed to the public, this claim fails.

### C. Prosecutorial Misconduct

Petitioner's next claim is that Michigan violated his "Procedural Due Process rights to a fundamentally fair trial," when the prosecutor improperly provided a witness with a copy of "audiotapes before trial." ECF No. 1 at 9; PageID.9.  Petitioner alleges that the prosecution improperly provided Amanda Stremlow a "copy of all [secretly made] audiotapes" of Petitioner's phone conversations while in jail in order to "unduly influence her trial testimony." *Id.*  It is Petitioner's belief that had Ms. Stremlow not been provided those tapes, "her trial testimony would not have supported the state's case." *Id.*

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (noting that the *Darden* standard for prosecutorial misconduct claims on habeas review is controlling).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, and whether it was isolated or extensive, for example.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985); *see also Darden*, 477 U.S. at 181-82.  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See Young*, 470 U.S. at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295

-11-

U.S. 78, 84-85 (1935).

        The Michigan Court of Appeals considered this claim in Petitioner's direct appeal,

and rejected it:

> Defendant next argues that the prosecutor committed misconduct
> when she gave the victim audio recordings of defendant's jailhouse
> phone calls. We review this preserved issue de novo to determine
> whether defendant was denied a fair and impartial trial. *People v.
> Mann*, 288 Mich.App 114, 119; 792 NW2d 53 (2010). We find no
> impropriety here. The recordings included defendant's conversations
> with another woman. Defendant does not assert that the victim was
> goaded by the recordings into offering perjurious testimony. Rather,
> defendant argues that the victim's testimony was compromised,
> because her in-court demeanor had been affected by the recordings.
> Defendant offers no authority, however, for the proposition that
> influencing a witness's demeanor constitutes prosecutorial
> misconduct. We note that the jury was apprised that the prosecutor
> gave the recordings to the victim, and that the victim testified about
> listening to the recordings. The jury was thus able to assess the
> victim's in-court demeanor. We cannot undermine the jury's
> assessment. See *People v. Lemmon*, 456 Mich. 625, 637; 576 NW2d
> 129 (1998).

*Davis*, 2011 WL 744904, at *1. The appellate court's review of this claim is thorough and

complete, and it does not contradict or unreasonably apply federal law to the facts of Petitioner's

case. *Bailey*, 271 F.3d at 655; *see also Lancaster*, 324 F.3d at 429.

        In accord with the appellate court's decision, this Court concludes that the

prosecution did not "'so infect[] the trial with unfairness as to make the resulting conviction a

denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). The jury

was told that the prosecutor provided Ms. Stremlow with the tapes before trial—meaning the jury

was aware of any potential bias in her testimony. As a result, Plaintiff's prosecutorial misconduct

claim does not rise to a constitutional level, and is therefore denied.

### D.  Audiotape Evidence

Next, Petitioner claims that the prosecution violated his "Confrontation Clause and Procedural Due Process rights by admitting into evidence against [Petitioner] audiotapes without authentication and testimony from [the] maker of [the] tapes."  ECF No. 1 at 10; PageID.10. Petitioner claims that "[t]he trial court admitted, as prosecutorial evidence against [Petitioner] during trial, . . . selected portions" of the "secret audiotapes" of Petitioner's jailhouse phone calls that Petitioner believes were favorable to the prosecution.  *Id.*  In addition, Petitioner states that he was "unreasonably denied an opportunity to question the witness([e]s) who made and authenticated those audiotapes which were never authenticated at trial," and he was "unduly denied an opportunity to present exculpatory evidence that probably was on those audiotapes." *Id.*

As previously mentioned, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir.

2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 124 S. Ct. 345 (2003).

"[C]ourts have defined the category of infractions that violate fundamental fairness very

narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

   Petitioner's claim that the audiotapes were improperly admitted during his trial is

not cognizable on habeas review because it is clearly a state law claim (rather than a

constitutional one). *Estelle*, 502 U.S. at 67-68. Consequently, this claim fails.

### E. Procedural Due Process, Confrontation Clause, and Landlords

   Petitioner's next four claims are that the prosecution violated his Confrontation

Clause and Procedural Due Process rights when his landlord (Thomas Ritchie)[1] was not produced

as a witness at trial. ECF No. 40 at 6-7, 9-11; PageID.283-284, 286-288. Petitioner states that

the prosecutor intentionally did not call Mr. Ritchie as a witness "so that Petitioner could not

cross examine Ritchie at trial," because Petitioner claims that Ritchie's "testimony would've

supported the Petitioner's actual innocence that he was indeed a resident of the dwelling." *Id.*

Moreover, Petitioner states that Mr. Ritchie's testimony would "have supported Defendant's

actual innocence defense by undermining Amanda Stremlow's credibility regarding the home

invasion charge." *Id.*

    In reading Petitioner's claim, it appears that Petitioner has mis-classified his

Procedural Due Process claim, as it aligns more with a Sixth Amendment Compulsory Process

claim. "The right to offer testimony is . . . grounded in the Sixth Amendment even thought it is

not expressly described in so many words." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

---

[1]Petitioner raises the same two Confrontation Clause and Procedural Due Process claims in relation to landlord Thomas Ritchie and another unnamed landlord. Both landlords are addressed in this section.

"[C]riminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilty."  *Id.* at 408 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)).  However, the decision whether to employ the presence of such a witness on his behalf rests "solely with the defendant."  *Id.* at 410.

Here, Petitioner claims that the prosecution denied him his right to subpoena witnesses on his behalf; however, the Michigan trial court indicated that it was Petitioner's defense attorney (not the prosecution) that ultimately decided not to subpoena Mr. Ritchie:

> The defense was free to subpoena Ritchie as a witness and, in fact, named Ritchie as a potential witness prior to trial.  However, it appears that defense counsel's trial strategy did not require subpoenaing Ritchie.

ECF No. 40-1 at 61; PageID.358. Moreover, the trial court stated that under Michigan laws, it was not the prosecutor's duty to subpoena witnesses on Petitioner's behalf:

> The Defendant claims that the prosecution intentionally failed to subpoena Ritchie to prevent the jury from hearing exculpatory evidence that Defendant was actually a resident of the dwelling in question. Defendant indicates that Ritchie was named as a possible trial witness, however, was never interviewed or subpoenaed by defense counsel.
>
> Michigan Court Rule 6.416, pertaining to Presentation of Evidence, states that each party has discretion in deciding which witnesses and what evidence to present. Therefore, the prosecution was under neither a duty, nor an obligation to subpoena Thomas Ritchie to testify at trial.

ECF No. 40-1 at 61; PageID.358. Given that it was Petitioner's trial attorney that decided not to subpoena Mr. Ritchie for trial, it is clear that Petitioner did not employ his right to have the government help secure Mr. Ritchie's presence for trial.  *Taylor*, 484 U.S. at 410. Therefore, his

Compulsory Process claim is denied.

In regard to Petitioner's Confrontation Clause claim, this allegation also fails. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. CONST., Am. VI. The Supreme Court has long read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)); *California v. Green*, 399 U.S. 149, 157-58 (1970) ("Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.").

Here, Petitioner is not claiming that any out-of-court statement made by Mr. Ritchie was improperly admitted at trial. In fact, there is no record or evidence that has been presented to this Court that of any of Mr. Ritchie's supposed statements were entered into the trial record. Rather, Petitioner claims that the prosecution should have subpoenaed Mr. Ritchie because he would have provided favorable testimony on behalf of Petitioner. This claim does not fall within the realm of a Confrontation Clause claim. As a result, it fails.

Finally, in his reply brief, Petitioner alleges that the prosecution committed a *Brady* violation by withholding Mr. Ritchie's testimony from trial. ECF No. 45 at 5; PageID.652. It is well settled that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose any evidence it has in its possession or of which it is aware which is both favorable to the accused and material to guilt or punishment. A defendant does not have to make a specific request for *Brady* evidence before the government has an obligation to disclose

-16-

favorable evidence.  *See United States v. Agurs*, 427 U.S. 97 (1976).  As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Id.* at 1565, citing *Agars* at 108.

However, the prosecutor does not have to disclose exculpatory evidence which is otherwise available to the defense.  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) ("No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988), *cert. denied*, 488 U.S. 1040, 109 S. Ct. 864, 102 L.Ed.2d 988 (1989), or where the evidence is available to defendant from another source.").

As previously mentioned, Petitioner was able to call Mr. Ritchie to testify at his trial if he wished.  *Taylor*, 484 U.S. at 410. Due to trial strategy, Petitioner's trial attorney opted against having him testify (this issue will be discussed in more detail *infra* in Section G). *See* ECF No. 40-1 at 61; PageID.358. Therefore, because Petitioner knew of Mr. Ritchie's potential testimony before trial, no *Brady* violation occurred.  *Clark*, 928 F.2d at 738 (noting a *Brady* violation does not occur when a defendant knew or should have known of the exculpatory evidence).  As a result, this claim fails.

**F.  Procedural Due Process and Insufficient Evidence**

Petitioner's next claim is that the prosecution did not prove "beyond a reasonable doubt the home invasion element that Amanda Stremlow was lawfully present in the dwelling[] and, therefore, Michigan violated Defendant's Procedural Due Process right, in an unfairly prejudicial manner under USCA XIV by convicting him of home invasion upon insufficient

evidence." ECF No. 40 at 12-13; PageID.289-290. Petitioner claims that Ms. Stremlow was the prosecution's "star witness," and that to demonstrate that she was lawfully present in the dwelling, she presented "a[n unsigned] piece of paper to the jury," stating that it was her lease. *Id.* However, Petitioner claims that there was "nothing on this paper confirming or permitting the paper presented to the jury" was a legal document or a "material copy of the <u>original</u> <u>writing</u> of the . . . lease." *Id.* Based on this information, Petitioner claims that there was insufficient evidence to convict him of home invasion.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by

AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

        In the Michigan Supreme Court case of *People v. Wilder*, 485 Mich. 35 (2010), the Court set forth the three "alternative elements" of home invasion in the first degree: (1) "[t]he defendant *either*: 1. breaks and enters a dwelling or 2. enters a dwelling without permission"; (2) "[t]he defendant *either* 1. intends when entering to commit a felony, larceny, or assault in the dwelling or 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault"; and (3) "[w]hile the defendant is entering, present in, or exiting the dwelling, *either*: 1. the defendant is armed with a dangerous weapon or 2. another person is lawfully present in the dwelling." *Lewis v. Rivard*, No. 1:10-CV-917, 2013 WL 4765875, at *2 (W.D. Mich. Sept. 4, 2013) (quoting *Wilder*, 485 Mich. at 43) (emphasis in original).

        Petitioner alleges that the unsigned document presented by Ms. Stremlow at trial is not sufficient to establish the third element (that Ms. Stremlow was "lawfully present in the dwelling"). ECF No. 40 at 12-13; PageID.289-290.  However, the question is not whether this Court would find this evidence sufficient to establish the third element of home invasion; rather, it is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (noting it is the jury's job to weigh the evidence and draw reasonable inferences therefrom); *see Herrera*, 506 U.S. at 401-02 (noting credibility is not reviewable on habeas review).  Based on the limited evidence presented, and when reviewing the evidence in the light most favorable to the prosecution, this Court concludes

that it is possible that a jury could conclude that Ms. Stremlow was lawfully present in the

dwelling based on her testimony and the document she presented to the jury at trial. *Jackson*, 443

U.S. at 324 n.16; *Allen*, 858 F.2d at 1196-97. Therefore, this claim fails.

### G. Ineffective Assistance of Trial Counsel

In both Petitioner's initial and amended habeas application, he claims that his

Sixth Amendment right to effective assistance of trial counsel was violated. ECF No. 1 at 12;

PageID.12; ECF No. 40 at 13-16; PageID.290-293. Petitioner claims that his trial counsel was

ineffective when he (1) "failed to seek trial testimony from the landlord [Thomas Ritchie]," (2)

"failed to object at trial" to the numerous constitutional violations that were mentioned in

Petitioner's aforementioned claims, (3) "failed to challenge the authenticity and admission of the

audiotapes," (4) "failed to contest Defendant's sentence," and (5) failed to demonstrate that

Petitioner was living with Ms. Stremlow at the time of the alleged home invasion. ECF No. 40 at

13-16; PageID.290-293.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To

establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that

counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair

outcome. Where counsel's performance did not fall below an objective standard of

reasonableness, the court need not reach the question of prejudice. *See United States v.*

*Foreman*, No. 01-3892, slip op. at 8-9 (6th Cir. Mar. 25, 2003).

A court considering a claim of ineffective assistance must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189-190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 89; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).  Where a prisoner has raised multiple claims of ineffective assistance of counsel and the state appellate courts have neglected to address one of the claims, the habeas court's review on the performance prong is *de novo.  See Daniel v. Curtin*, 499 Fed App'x 400, 404 (6th Cir. 2012). Petitioner's claims of

ineffective assistance of counsel fail for the following reasons.

Petitioner raised his first ineffective assistance of counsel claim (failure to call

landlord Thomas Ritchie to testify) in his motion for relief from judgment in the trial court:

> The defense was free to subpoena Ritchie as a witness and, in fact, named Ritchie as a potential witness prior to trial.  However, it appears that defense counsel's trial strategy did not require subpoenaing Ritchie.  Defendant argues that defense counsel's failure to subpoena Ritchie resulted in unfair prejudice and amounted to ineffective assistance of counsel.

> The Court of Appeals previously addressed this argument in its decision, stating:

>> Also meritless is defendant's assertion that defense counsel failed to obtain and present evidence that defendant lived in the victim's residence.  Defendant maintains that counsel should have subpoenaed his former landlord, who would have verified that defendant and the victim broke their lease in order to move into the residence where the home invasion occurred. If this is so (and there is not evidence in the record that it is), the information would have been readily available to the defendant.  The same is true of defendant's assertion that he was receiving legal notices at the victim's residence regarding hearings scheduled on his breaking of the lease with the former landlord.  Counsel cannot be deemed ineffective for failing to discover information readily available to defendant.

> The Michigan Court Rules assert that a defendant has the burden of establishing entitlement to the relief requested in his motion and that the court may not grant relief if the motion:

>> [A]lleges grounds for relief which were decided against the defendant in a prior appeal or proceeding . . . unless the defendant establishes that a retroactive change in the law has undermined the prior decision [and/or] alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion.

-22-

> As was indicated above, the Michigan Court of Appeals previously
> heard the Defendant's arguments pertaining to ineffective assistance
> of trial counsel. As the Defendant has failed to establish a retroactive
> change in the law that would undermine his conviction, and because
> the Court of Appeals found his claim of ineffective assistance of trial
> counsel to be meritless, this Court may not grant relief on Grounds I
> through IV, VI and VII.

ECF No. 40-1 at 61-62; PageID.358-359 (citations omitted).  The state courts' review of this claim is thorough and complete, and it does not contradict or unreasonably apply federal law to the facts of Petitioner's case. *Bailey*, 271 F.3d at 655; *see also Lancaster*, 324 F.3d at 429.

Nonetheless, Petitioner alleges that his trial attorney performed deficiently by not calling Mr. Ritchie at trial, by not pursuing a certain defense, and by failing to object at certain times during trial and at sentencing.  However, these claims do not demonstrate objectively deficient performance.  "Decisions as to whether to call certain witnesses or what evidence to present are presumed to be [] matters of trial strategy, and failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-CV-369, 2011 WL 4346333, at 16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 Fed. App'x 309, 311 (6th Cir. 2004) (noting that a substantial defense is one that might have made a difference in the trial outcome); *see also Thomas v. McKee*, No. 2:11-CV-10653, 2016 WL 213021, at **14, 20 (E.D. Mich. Jan. 19, 2016) ("[T]he decision to call a witness is a matter within counsel's trial strategy that, absent a showing of prejudice, does not make counsel's performance deficient," and "great deference is afforded to an attorney's decisions relating to trial strategy, such as choosing when to object.") (citing *Samatar v. Clarridge*, 225 Fed. App'x 366, 372 (6th Cir. 2007) and *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (noting defense attorney need not call or interview a witness

-23-

that would not have exculpated defendant). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.  Because Petitioner's trial attorney's performance did not deprive Petitioner of a substantial defense, his performance did not fall below an objective standard of reasonableness.  *See Foreman*, No. 01-3892, slip op. at 8-9 (noting the court need not touch on the prejudice prong of *Strickland* if deficient performance has not been established).  Consequently, Petitioner's ineffective assistance of trial counsel claims fail.

### H.  Ineffective Assistance of Appellate Counsel

In Plaintiff's final claim, he states that his "appellate counsel failed to present grounds one through six on his appeal of right."  ECF No. 40 at 16; PageID.293 (noting claims of confrontation clause, compulsory clause issues, and procedural due process).  Petitioner states that these claims "would have been successful on appeal" and that his appellate counsel improperly refused to help him with his *pro per* brief on appeal.  *Id.*  Moreover, he claims that appellate counsel "refused to contact the new landlord of the [apartment] to see if trial counsel had contacted" that person, and failed to demonstrate that Petitioner did live with the victim (Ms. Stremlow) at the time of the incident.  ECF No. 40 at 16-17; PageID.293-294.

To prevail on an ineffective assistance of appellate counsel claim, Petitioner must show that (1) "his counsel was objectively unreasonable in failing to find arguable issues to appeal–that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and if successful in that showing, then Petitioner must demonstrate by a reasonable probability that "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 285, 285-86 (2000) (citations

omitted).

        Notably, an appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith*, 528 U.S. at 289.  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

        It should be noted that Petitioner filed a motion for relief from judgment raising many of the claims that he argues his appellate counsel should have argued on direct appeal. Petitioner did not prevail in any of those claims.  Based on this fact, and given the arguments of Petitioner on habeas review, it is clear that Petitioner's appellate counsel did not err by choosing not to argue these additional claims on direct appeal because these claims were not "clearly stronger than [the] issues that counsel did present." *Smith*, 528 U.S. at 289; *see Smith*, 477 U.S. at 536 (noting an attorney is effective when he winnows out frivolous arguments and argues those only most likely to prevail on appeal).  As a result, Petitioner's final claim of ineffective assistance of appellate counsel fails.

III.

This Court concludes that all of Petitioner's claims are without merit.  Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, this Court **DENIES A CERTIFICATE OF APPEALABILITY** as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's motion for post-conviction relief (ECF No. 40) pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED**.


___/s/ *R. Allan Edgar*_____

Dated:   2/18/2016                          R. ALLAN EDGAR
                                            UNITED STATES DISTRICT JUDGE